448 S.E.2d 606 (1994)
James H. SNOW, et al.
v.
AMHERST COUNTY BOARD OF ZONING APPEALS.
Record No. 931613.
Supreme Court of Virginia.
September 16, 1994.
*607 James O. Watts, IV, Lynchburg (Bernard C. Baldwin, III; R. Edwin Burnette, Jr.; Edmunds and Williams, on briefs), for appellants.
W. Edward Meeks, III, County Atty., for appellee.
Present: All the Justices.
HASSELL, Justice.
In this appeal, we consider whether landowners have obtained a vested property right to use their land in the manner described by the terms of a zoning variance.
In 1989, James H. and Mary C. Snow wanted to buy and develop for residential purposes a 3.76-acre parcel of land (the parcel) in Amherst County. The parcel is surrounded on three sides by property owned by Amherst County. The County's property had been developed as a watershed lake and is known as Mill Creek Reservoir.
The parcel is also located adjacent to a conservation zone created by a zoning ordinance, which prohibited construction within 200 feet of a conservation zone. This prohibition effectively precluded the construction of a house on the property due to the shape of the lot. Accordingly, before purchasing the property, the Snows applied to the Board of Zoning Appeals of Amherst County (the BZA) for a variance reducing the minimum setback requirement from 200 to 120 feet. That variance was granted in 1989.
Thereafter, the Snows purchased the parcel for approximately $5,000 and expended between $4,000 and $5,000 to survey the parcel, remove trees and undergrowth, and construct a gravel road. In November 1991, the Board of Supervisors amended the County's zoning and subdivision ordinances to include the Mill Creek Reservoir and the Snows' parcel in the watershed district. This amendment proscribes the location of structures, on-site sewage systems, and drain fields or reserve drain fields within 350 feet of the normal pool elevation of a water supply reservoir. The amendments effectively prohibit construction of a residence anywhere on the parcel.
The Snows filed a request for a variance from the 1991 zoning ordinance amendments. The BZA denied the Snows' request. The Snows filed a petition in the circuit court, pursuant to Code § 15.1-497, requesting a writ of certiorari to review the decision of the BZA.
During the proceedings in the circuit court, the Snows and the BZA requested that the court decide what they believed was the dispositive issue in this case: whether the Snows had obtained a vested right to use the property in the manner permitted by the variance. The trial court held that the Snows failed to show that the decision of the BZA was plainly wrong and that it was "abundantly clear that the adoption of the Watershed District by Amherst County in 1991 was intended to protect the Mill Creek Reservoir watershed." The court also held that the Snows do not have a vested property right in usage permitted under the 1989 variance because they failed to construct a residence on the parcel before the zoning ordinance was amended. We awarded the Snows an appeal.
The Snows argue that they acquired a vested property right to use their land in the manner described by the variance because, they say, the BZA's act of granting a variance *608 constituted a significant official act upon which the Snows relied.[*] The BZA, however, asserts that the Snows do not have a vested property right. We agree with the BZA.
We have repeatedly and consistently stated and applied the test that we use to determine whether a landowner has obtained a vested right in a land use classification. In Board of Supervisors of Fairfax County v. Medical Structures, Inc., 213 Va. 355, 192 S.E.2d 799 (1972), the County Board of Zoning Appeals issued a special use permit to Medical Structures' predecessor in title. The permit allowed Medical Structures' predecessor to construct a nursing home on its property. After purchasing the property, Medical Structures expended $247,500 in development and preparation of the site plans, which were a prerequisite to the issuance of a building permit. The County notified Medical Structures that certain zoning amendments, enacted after Medical Structures had acquired the property, prohibited approval of its site plan. We stated:
[W]here, as here, a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.
213 Va. at 358, 192 S.E.2d at 801. We have applied this test in Holland v. Board of Supervisors of Franklin County, 247 Va. 286, 290, 441 S.E.2d 20, 22 (1994); Town of Stephens City v. Russell, 241 Va. 160, 163, 399 S.E.2d 814, 815 (1991); Notestein v. Board of Supervisors of Appomattox County, 240 Va. 146, 151, 393 S.E.2d 205, 208 (1990); and Board of Supervisors of Fairfax County v. Cities Service Oil Co., 213 Va. 359, 362, 193 S.E.2d 1, 3 (1972).
We reject the Snows' contention that a landowner may acquire a vested property right in a particular land use merely by showing a significant official governmental act and reliance thereon. Rather, as we have stated in each of the aforementioned cases, a landowner who seeks to establish a vested property right in a land use classification must identify a significant official governmental act that is manifested by the issuance of a permit or other approval authorizing the landowner to conduct a use on his property that otherwise would not have been allowed. Additionally, and equally important, our test requires that the landowner establish that he has diligently pursued the use authorized by the government permit or approval and incurred substantial expense in good faith prior to the change in zoning. A landowner, who seeks to assert a vested property right, must establish all these elements.
On each occasion in which we have considered whether a landowner had acquired a vested property right to a particular land use, we have held, among other things, that the property owner must identify a significant official governmental act that would permit the landowner to conduct a use on his property that otherwise would not have been allowed. For example, in Medical Structures and Cities Service, we held that the landowners had acquired vested rights in their respective land uses because governmental entities had issued special use permits to them, and the landowners had complied with the other legal requirements necessary for the establishment of a vested right.
By contrast, in Notestein, Town of Stephens City, and Holland, we held that the landowners had not obtained vested property rights because they failed to show that a governmental entity had committed a significant official act, manifested by the issuance of a permit or other approval authorizing the landowner to engage in a specific use that otherwise would not have been allowed.
Contrary to the Snows' assertion, the grant of a variance is not a significant official governmental act within the meaning of our established precedent. The mere reliance on *609 a particular zoning classification, whether created by ordinance or variance, creates no vested right in a property owner. A variance is simply an authorized deviation from zoning requirements because of special characteristics of a particular property. The grant of a variance cannot confer upon a landowner greater rights than could be afforded by the enactment of a zoning ordinance.
Accordingly, we conclude that the BZA's grant of a variance is not the type of significant governmental act required by our precedent. Thus, we need not consider whether the Snows established the remaining elements of the test that we articulated in Medical Structures. Therefore, we will affirm the judgment of the trial court.
Affirmed.
STEPHENSON, J., dissents.
STEPHENSON, Justice, dissenting.
I respectfully dissent.
The majority correctly states the elements that a landowner must prove to establish a vested property right. I submit that, in the present case, the Snows have proven the requisite elements.
Contrary to the majority's conclusion, I would hold that the granting of a variance is a "significant official governmental act." Boards of zoning appeals are authorized and empowered to grant variances pursuant to statute, Code §§ 15.1-495 to -496.1, and a board's decision to grant a variance is presumed to be correct on appeal to a circuit court. Board of Zoning Appeals v. Glasser Bros. Corp., 242 Va. 197, 200, 408 S.E.2d 895, 897 (1991). Moreover, a board's decision cannot be overturned by the court unless it is plainly wrong or the board applied erroneous principles of law. Id. Also, I would hold that the granting of the variance constituted an "other approval authorizing [the Snows] to conduct a use on [their] property that otherwise would not have been allowed." (Emphasis added.) Additionally, the record supports a finding that the Snows diligently pursued the use authorized by the variance and incurred substantial expense in good faith prior to the zoning amendments.
Finally, I think the result reached by the majority is particularly harsh because it leaves the Snows with land that is virtually worthless. The BZA's attorney conceded in oral argument before this Court that the only use the Snows can make of this land is for agricultural purposes.
Accordingly, I would reverse the trial court's judgment and avoid this harsh result.
NOTES
[*] We find no merit in the Board of Supervisors' contention that the Snows' arguments are not within the scope of their assignment of error.