PRESENT:  All the Justices

NORFOLK 102, LLC,
T/A BAR NORFOLK, ET AL.

                                          OPINION BY
v.   Record No. 120634      CHIEF JUSTICE CYNTHIA D. KINSER
                                        February 28, 2013
CITY OF NORFOLK, ET AL.

             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Norman A. Thomas, Judge

     Norfolk 102, LLC, and Norfolk 302, LLC, are business

establishments operating in the City of Norfolk (the City) and

trading as Bar Norfolk and Have a Nice Day Café (the Café),

respectively.  In 2009, the City of Norfolk Council (the City

Council) revoked a blanket special exception permitting Bar

Norfolk and the Café to operate as "Entertainment

Establishments" serving alcoholic beverages for on-site

consumption and denied their individual applications for special

exceptions to continue such operations.  Both establishments now

assert that the City Council's actions impaired their vested

rights and that the manner in which the City Council executed

these actions violated their statutory notice and constitutional

due process rights.

     Bar Norfolk and the Café, however, cannot claim vested

rights under Code § 15.2-2307 to a land use that was

impermissible under the applicable zoning ordinance when they

opened for business, and no City official issued a determination

under Code § 15.2-2311(C) authorizing the use of their premises

in a manner not otherwise permitted under the existing zoning ordinances. Furthermore, Bar Norfolk and the Café had notice of and an opportunity to be heard at the City Council meeting when these matters were considered. Therefore, we will affirm the circuit court's judgments.

## I. RELEVANT FACTS AND PROCEEDINGS

Bar Norfolk and the Café are located in the City along the Elizabeth River in a business park known as the Waterside Festival Marketplace (Waterside). Waterside originally opened in 1983, at which time it was in the zoning district SPI-1: Downtown Waterfront Special Public Interest District. Permitted uses in that district included "[e]ating and drinking establishments" with the sale of alcoholic beverages for on-premises consumption provided an establishment obtained a "use permit." Prior to Waterside's opening, the City Council granted Waterside's developer such a use permit by enacting Ordinance 32,160 (1983 Ordinance).

That ordinance stated:

> [A] Use Permit is hereby granted to Waterside Associates authorizing the use of property as an urban marketplace type shopping center having uses such as . . . restaurants, including the sale of beer, wine and mixed beverages for on-premises consumption within such specific premises as may be licensed by the Virginia Alcoholic Beverage Control [ABC] Commission on the herein described property:

2

> All that certain lot, piece or parcel of
> land known and designated as Parcel R-1 on
> that certain plat entitled "Plat of Property
> – Parcel R-1" attached . . . to the Deed of
> Lease dated November 25, 1981, between
> Waterside Associates and the Norfolk
> Redevelopment and Housing Authority . . . .

As originally constructed, Waterside was situated entirely within Parcel R-1 encompassed by the 1983 Ordinance.

In addition to granting the blanket use permit to Waterside, the 1983 Ordinance authorized the issuance of "Sub-Use Permits," which were "to distinguish for enforcement convenience a permit issued for specific ABC licensed premises as the result of and deriving from the existence of the general use permit for the entire Waterside premises." An entity leasing space in Waterside and licensed by the ABC Commission was required to apply to the City's zoning administrator for a Sub-Use Permit to operate its proposed business.

Following enactment of the 1983 Ordinance, the City Council took several actions with respect to Waterside and its zoning. First, it re-subdivided several adjoining parcels of real estate and combined them with the original Parcel R-1, thereby vacating all the existing property lines and expanding the size of the original parcel upon which Waterside was located. Waterside was

then situated on property designated Parcel R-1-A.[1]  In 1992, the

City Council enacted a new comprehensive zoning ordinance,

placing the entire Waterside parcel in a new D-1 Downtown

Waterfront District.[2]  Uses in that district requiring the City

Council's approval as a special exception included "Eating and

Drinking Establishments" and "Entertainment Establishments."  An

ordinance enacted in 1997 (1997 Ordinance), in turn, defined the

terms "Eating and Drinking Establishment" and "Entertainment

Establishment."  The 1997 Ordinance also created the permitted

use, not requiring a special exception, of an "Eating

Establishment" and defined that term as well.[3]

---

[1] Sometime after the re-subdivision, the Waterside structure
itself was expanded.

[2] Although the 1992 zoning ordinance repealed the City's
previous comprehensive zoning ordinance dating from 1968, it
nevertheless provided that "all zoning clearances, permits, site
plan approvals and other such regulatory authorizations as have
been granted or duly applied for . . . shall, at option of the
grantor or applicant, be governed by the substantive provisions"
of the 1968 zoning ordinance.

[3] The term "Eating Establishment" was defined as a "business
establishment whose function is the preparation and selling of
unpackaged food to the customer in a ready to consume state, and
where the customer consumes these foods while seated at tables
or counters primarily located within a building.  There shall be
no sale of alcoholic beverages."  The term "Eating and Drinking
Establishment" was defined as an "eating establishment also
having as a function the sale of beer, wine and/or mixed
beverages for consumption on the premises and requiring a retail
on-premises license from" the ABC Commission.  "Such
establishment shall not provide entertainment, but may have as
an accessory function live performances with only one
nonelectronic musical instrument and/or recorded background
music and a dance floor not to exceed 10% of the seating area of

In June 1998, the Café entered into an agreement to lease space in the expanded Waterside structure; in January 1999, Bar Norfolk did the same.  And in June 1998 and March 1999, respectively, the Café and Bar Norfolk received a document signed by the City's zoning administrator and titled "Cash Receipt."  On the top, right-hand side, each document bore the inscription "Zoning Clearance Certificate," and in a box titled "Description," the words "Zoning Clearance for Business License" were typed.  On a line next to the heading "License Category" someone had written the words "Eating Place," a land use that did not exist under the terms of the 1992 comprehensive zoning ordinance or the definitions enacted in the 1997 Ordinance. Both businesses opened in March 1999 as "Entertainment Establishments" and, having obtained ABC licenses, both sold alcoholic beverages for on-premises consumption.

In May 1999, the City Council enacted Ordinance 39,579 (1999 Ordinance), titled "An Ordinance Authorizing Operation of the Waterside Festival Marketplace as an Entertainment Establishment."  The 1999 Ordinance granted an "Adult Use Special Exception . . . authorizing the operation of an

the establishment."  Finally, the term "Entertainment Establishment" was defined as an "establishment where entertainment is provided, or having a dance floor which occupies more than 10% of the seating area of the establishment. This shall not include commercial [recreation] restaurants or commercial indoor recreation centers."

Entertainment Establishment" on the entire expanded Waterside parcel. The special exception was subject to several conditions, including that "[a]ny requirements, limitations, or restrictions imposed by the Virginia ABC Commission" were "effective and binding." In addition, any violation of the terms of an ABC license also constituted a violation of the special exception and permitted the City Council to bring proceedings to revoke the special exception as to the offending business establishment.

After the enactment of the 1999 Ordinance and prior to the commencement of the litigation at issue in this appeal, Bar Norfolk was cited three times for violating its ABC license and the Café was cited once. In addition, a "Bar Task Force" created by the City Council monitored both establishments and documented numerous violations of local and state requirements. Due to these and other concerns, the City decided in 2009 to seek repeal of the blanket special exception granted in the 1999 Ordinance and instead require each ABC-licensed business located in Waterside to obtain an individual special exception to operate as an "Entertainment Establishment" or an "Eating and Drinking Establishment."

In an April 2009 letter, the City notified the managers of both Bar Norfolk and the Café of its intent. Bar Norfolk and the Café then each submitted an application for an "Adult Use

6

Special Exception" to operate an "Entertainment Establishment with alcoholic beverages." After initial review, the City's planning commission voted at a public hearing to recommend approval of both applications. The City manager, however, subsequently learned additional information about each establishment's violations and recommended that the City Council deny both applications.

Based on the planning commission's recommendations, Bar Norfolk and the Café believed that their special exception applications would be approved by the City Council. However, they learned of opposition to the applications the day before the City Council was scheduled to consider them. Because their attorney was unavailable, Bar Norfolk and the Café hired new counsel that same day. At its meeting the following day, August 18, 2009, the City Council considered the individual special exception applications of all the establishments located in Waterside, including Bar Norfolk and the Café, as well as item R-19A, an ordinance to revoke the blanket special exception granted in the 1999 Ordinance. While consideration of the special exception applications was on the City Council's pre-published agenda, item R-19A was not.

At the August 18, 2009 meeting, counsel for Bar Norfolk and the Café requested "as a matter of fairness" that the City Council delay consideration of the special exception

applications and the proposed ordinance revoking the blanket special exception granted in the 1999 Ordinance. According to their counsel, neither Bar Norfolk nor the Café were prepared to address the recent opposition to their special exception applications, in part because their regular attorney was unavailable. In addition, counsel argued that consideration of item R-19A was illegal because it was not originally on the Council's meeting agenda. In addition to counsel for Bar Norfolk and the Café, approximately 30 employees of the establishments attended the meeting and representatives from both addressed the City Council. Nevertheless, the City Council enacted Ordinance 43,555 (2009 Ordinance), which specifically revoked "a special exception previously granted . . . by [the 1999 Ordinance], authorizing the operation of an entertainment establishment" on the Waterside property. In addition, the City Council denied the applications of both Bar Norfolk and the Café for a special exception to operate an "Entertainment Establishment" in Waterside.

Bar Norfolk and the Café, however, opened for business the following day. As a result, the City filed a complaint in the Circuit Court of the City of Norfolk requesting that Bar Norfolk and the Café be "permanently enjoined from selling or serving alcohol or providing entertainment" in their businesses located in Waterside. Bar Norfolk and the Café responded by filing an

answer, a counterclaim, and a separate complaint and petition for appeal against the City Council pursuant to Code § 15.2-2285(F). As relevant here, they asserted that the City Council violated their due process rights by failing to give proper notice prior to revoking the blanket special exception granted in the 1999 Ordinance; that the City Council's revocation of the 1999 Ordinance and denial of their special exception applications were arbitrary and capricious, contrary to law and fact, and invalid; and that, because they opened their establishments before the enactment of the 1999 Ordinance, they had vested rights under Code § 15.2-2307 that were unaffected by the City Council's revocation of the special exception contained in the 1999 Ordinance. Bar Norfolk and the Café requested, inter alia, that the City be enjoined from interfering with the lawful operation of their respective business establishments and that an order be entered declaring that the City Council's actions were unlawful and void or, if valid, that the City nevertheless could not impair their vested rights.

During the pendency of those actions, the City's zoning administrator issued Bar Norfolk and the Café an unsolicited determination that neither had "any vested right to operate as a lawful nonconforming use in the spaces each rented within Waterside." The zoning administrator explained that the special exception created by the 1983 Ordinance did not apply to either

9

business establishment because each premise was located in the expanded Waterside structure and thus did not lie within Parcel R-1 encompassed by the 1983 Ordinance. Consequently, according to the zoning administrator, neither Bar Norfolk nor the Café was lawfully operating in accordance with applicable zoning regulations prior to the enactment of the 1999 Ordinance, at which time "both businesses became lawful, conforming Entertainment Establishments and remained conforming uses until" the City Council revoked the blanket special exception created by the 1999 Ordinance.

Bar Norfolk and the Café appealed the zoning administrator's determination to the City's board of zoning appeals (BZA), which affirmed the decision. Bar Norfolk and the Café then each filed a petition for a writ of certiorari in the Circuit Court of the City of Norfolk pursuant to Code § 15.2-2314, seeking reversal of the BZA decision. The circuit court consolidated the four pending actions for decision.

Upon considering the evidence, the record developed by the parties, and their arguments, the circuit court denied the relief requested by Bar Norfolk and the Café. Among several issues addressed by the circuit court in its letter opinion, two are relevant to this appeal: (1) whether Bar Norfolk and the Café were entitled to declaratory relief holding that the City Council acted unlawfully when it enacted the 2009 Ordinance

revoking the blanket special exception created by the 1999

Ordinance; and (2) whether the BZA correctly determined that

neither Bar Norfolk nor the Café possessed any vested rights to

"operate as Entertainment Establishments and serve on-premises

alcoholic beverages at Waterside."

With respect to their claims that the City Council violated

the mandatory notice provisions of Code § 15.2-2204 prior to

revoking the 1999 Ordinance, the circuit court ruled that Bar

Norfolk and the Café received actual notice as contemplated by

Code § 15.2-2204(B).  The circuit court also concluded that the

City Council did not violate their constitutional due process

rights because they received actual notice and a reasonable

opportunity to be heard by actively participating in the City

Council meeting.

Regarding Bar Norfolk's and the Café's claims to vested

rights, the circuit court made several findings.  First, the

circuit court held that none of Bar Norfolk's premises was

located within the original Parcel R-1 encompassed by the 1983

Ordinance and that only a small portion of the Café's floor

space fell within Parcel R-1.  Consequently, as to the entirety

of Bar Norfolk's premises and the remaining portions of the Café

that were built after 1983 in the expanded portion of Waterside,

the circuit court found that the "general use permit of the 1983

Ordinance ha[d] no applicability."  Additionally, the circuit

11

court found that, upon passage of the 1997 Ordinance, the operation of an "Entertainment Establishment" in the D-1 District required a special exception. Citing the principle that Code § 15.2-2307 only vests rights in a permissible land use, see Goyonaga v. Board of Zoning Appeals, 275 Va. 232, 243-44, 657 S.E.2d 153, 159-160 (2008), the circuit court held that neither Bar Norfolk nor the Café had a special exception to operate as an "Entertainment Establishment" or to sell alcoholic beverages for on-premises consumption when they opened for business. The only special exception that ever applied to either establishment, the court held, was that contained in the 1999 Ordinance, which was legally revoked by the City Council in 2009.

As to Bar Norfolk's and the Café's alternative argument that they had vested rights under Code § 15.2-2311(C), the court found that neither the zoning administrator nor any other City official had made a "specific pronouncement" regarding these businesses' land use that would create "an entitlement" to operate as an "Entertainment Establishment" and sell alcoholic beverages for on-premises consumption. The court explained that although various City officials acquiesced in Bar Norfolk's and the Café's operating as "Entertainment Establishments" and providing alcoholic beverages for on-premises consumption prior to the enactment of the 1999 Ordinance, such acquiescence in a

12

land use did not satisfy the requirements of Code § 15.2-2311(C).[4]

In sum, the circuit court concluded that Bar Norfolk and the Café

> [were] not entitled . . . to declaratory relief holding that [the City] Council acted unlawfully . . . when it revoked the blanket special exception respecting the operation of Entertainment Establishments at Waterside and denied the applications of [Bar Norfolk] and [the Café] for individual special exceptions to conduct such business operations at Waterside.

Additionally, the court concluded that

> [t]he [BZA] correctly ruled that [Bar Norfolk] and [the Café] possess no vested rights to operate as Entertainment Establishments at Waterside, that [Bar Norfolk] possessed no vested right to serve on-premises alcoholic beverages at Waterside, and that [the Café] possessed no vested right to serve on-premises alcoholic beverages at Waterside, except, however, as to the small area of [the Café's] floor space still subject to the general use permit of the 1983 Ordinance.

The circuit court, therefore, granted the City's request for injunctive relief prohibiting Bar Norfolk and the Café from operating as "Entertainment Establishments" and selling alcoholic beverages for on-premises consumption, and rejected Bar Norfolk's and the Café's requests for injunctive relief.

---

[4] The circuit court also held that Bar Norfolk and the Café failed to establish the existence of a "significant affirmative governmental act" as required by Code § 15.2-2307.

13

Bar Norfolk and the Café appeal from the circuit court's judgments.

## II. ANALYSIS

Bar Norfolk and the Café first challenge the circuit court's judgments holding that they possessed no vested rights to operate as "Entertainment Establishments" and to sell alcoholic beverages for on-premises consumption. That issue was before the circuit court in both Bar Norfolk's and the Café's petitions for a writ of certiorari seeking reversal of the BZA decision and in their complaints for declaratory relief. Regardless of the different proceedings in the circuit court, the issue presented on appeal is a question of law that we review de novo. See Shilling v. Baker, 279 Va. 720, 724, 691 S.E.2d 806, 808 (2010); Code § 15.2-2314.

Bar Norfolk and the Café also assign error to the circuit court's judgment holding that the City Council acted lawfully and did not violate their due process rights when it enacted the 2009 Ordinance revoking the 1999 Ordinance and the blanket special exception for Waterside. This issue is likewise a question of law reviewed de novo on appeal. See L.F. v. Breit, 285 Va. 163, 176, 736 S.E.2d 711, 718 (2013). We will address the issues seriatim.

14

## A. Vested Rights

Bar Norfolk and the Café assert that, when they opened for business in 1999, the City allowed them to provide entertainment and serve alcoholic beverages for on-premises consumption under the auspices of the 1983 Ordinance. They also contend that the City's issuance of the "Zoning Clearance for Business License" to each of them, with full knowledge of the nature of their businesses, was a significant affirmative governmental act that created vested rights. Thus, Bar Norfolk and the Café contend that, whether analyzed under Code § 15.2-2307 or Code § 15.2-2311(C), both establishments have vested rights to continue such business operations that the City cannot now impair.[5]

"[I]n limited circumstances, private landowners may acquire a vested right in planned uses of their land that may not be prohibited or reduced by subsequent zoning legislation." Board of Zoning Appeals v. CaseLin Sys., Inc., 256 Va. 206, 210, 501 S.E.2d 397, 400 (1998). Pursuant to Code § 15.2-2307,

---

[5] Each of the relevant statutes has been amended multiple times in the past three decades. However, the parties make no claim that the prior wording of the governing statutes, or the case law that preceded or construed the prior statutes, makes applicable any standard different than that set forth in the current statutory language. See, e.g., Board of Zoning Appeals v. CaseLin Sys., Inc., 256 Va. 206, 210-11, 501 S.E.2d 397, 400 (1998); Town of Rocky Mount v. Southside Investors, Inc., 254 Va. 130, 132, 487 S.E.2d 855, 856 (1997); Snow v. Amherst Cnty. Bd. of Zoning Appeals, 248 Va. 404, 407-08, 448 S.E.2d 606, 608-09 (1994); Holland v. Board of Supervisors, 247 Va. 286, 290-91, 441 S.E.2d 20, 22-23 (1994). Therefore, we employ the current wording of the applicable provisions in this opinion.

a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner (i) obtains or is the beneficiary of a significant affirmative governmental act which remains in effect allowing development of a specific project, (ii) relies in good faith on the significant affirmative governmental act, and (iii) incurs extensive obligations or substantial expenses in diligent pursuit of the specific project in reliance on the significant affirmative governmental act.[6]

"The clear intent of the statute is to provide a property owner with protection from a subsequent amendment to a zoning ordinance when the owner has already received approval for and made substantial efforts to undertake a use of the property permitted under the prior version of the ordinance."  Goyonaga, 275 Va. at 243, 657 S.E.2d at 159.  The statute "provides for the vesting of a right to a permissible use of property against any future attempt to make the use impermissible by amendment of the zoning ordinance; it is not intended to permit, nor does it provide for, the vesting of a right to an impermissible use under the existing ordinance."  Id. at 244, 657 S.E.2d at 160 (second emphasis added).

---

[6] The circuit court noted that neither Bar Norfolk nor the Café own any portion of the land upon which their respective businesses are located.  The court, however, ignored that fact for decisional purposes because of certain language in a section of the 1992 zoning ordinance.  Whether Bar Norfolk and the Café can claim vested rights under Code § 15.2-2307 as non-landowners, therefore, is not before us in this appeal.

When Bar Norfolk and the Café opened their respective businesses, the 1997 Ordinance required a special exception to operate as either an "Eating and Drinking Establishment" or an "Entertainment Establishment" in the D-1 District. Of course, the City Council granted Waterside a blanket special exception when it enacted the 1999 Ordinance, which applied to Bar Norfolk and the Café. Upon revocation of the blanket special exception with the enactment of the 2009 Ordinance, Bar Norfolk and the Café asserted vested rights under the 1983 Ordinance to operate as Entertainment Establishments and to provide alcoholic beverages for on-premises consumption. That ordinance, however, only authorized "the use of property as an urban marketplace type shopping center having uses such as . . . food and beverage stalls and restaurants, including the sale of beer, wine and mixed beverages for on-premises consumption within [a] piece or parcel of land known and designated as Parcel R-1." (Emphasis added.)

As the circuit court found, no portion of Bar Norfolk's premises was located within Parcel R-1 encompassed by the 1983 Ordinance. And, only a small portion of the Café's premises lay within Parcel R-1. The portion of the Café within the R-1 parcel, according to the floor plan presented at trial, included only one-eighth to one-sixth of the total space occupied by the

17

Café.[7]  Furthermore, the 1983 Ordinance did not create any special exception for business establishments located in Parcel R-1 to operate as an "Entertainment Establishment."

Thus, except for the small portion of the Café's premises that was **within** Parcel R-1, the special exception found in the 1983 Ordinance did not apply to either Bar Norfolk's or the Café's business establishment.  Providing entertainment or serving alcoholic beverages for on-premises consumption was never a permissible use of their respective properties under the 1983 Ordinance.  Because Bar Norfolk and the Café assert vested rights to an impermissible land use under the 1983 Ordinance, the circuit court did not err in finding that neither had any vested rights under Code § 15.2-2307.  See Goyonaga, 275 Va. at 244, 657 S.E.2d at 160 ("Code § 15.2-2307 provides for the vesting of a right to a permissible use of property . . . ; it is not intended to permit, nor does it provide for, the vesting of a right to an impermissible use under the [applicable] ordinance.").

Alternatively, Bar Norfolk and the Café assert the right to continue their business operations pursuant to Code § 15.2-2311(C).  They contend that the "Cash Receipt" each of them received, which was signed by the zoning administrator, bore the

_____

[7] Bar Norfolk and the Café do not contest these factual findings.

18

description of "Zoning Clearance for Business License," and listed the "License Category" as an "Eating Place," constituted a determination that they could operate as "Entertainment Establishments" and sell alcoholic beverages for on-premises consumption. The provisions of Code § 15.2-2311(C), according to Bar Norfolk and the Café, prohibit any change or modification to that determination.

That section states:

> In no event shall a written order, requirement, decision or determination made by the zoning administrator or other administrative officer be subject to change, modification or reversal by any zoning administrator or other administrative officer after 60 days have elapsed from the date of the written order, requirement, decision or determination where the person aggrieved has materially changed his position in good faith reliance on the action of the zoning administrator or other administrative officer unless it is proven that such written order, requirement, decision or determination was obtained through malfeasance of the zoning administrator or other administrative officer or through fraud. The 60-day limitation period shall not apply in any case where, with the concurrence of the attorney for the governing body, modification is required to correct clerical errors.

In contrast to Code § 15.2-2307, this section "does provide for the potential vesting of a right to use property in a manner that otherwise would not have been allowed." Goyonaga, 275 Va.

19

at 244, 657 S.E.2d. at 160 (internal quotation marks omitted). Nevertheless, we agree with the circuit court.

The "Cash Receipt" was not a specific determination by the zoning administrator or any other City official that either of these businesses could use their respective premises in a manner not otherwise allowed under the zoning ordinances in effect at that time. See Board of Supervisors v. Crucible, Inc., 278 Va. 152, 161, 677 S.E.2d 283, 288 (2009); Code § 15.2-2307 (the "following are deemed to be significant affirmative governmental acts[:] (vii) the zoning administrator . . . has issued a written order, requirement, decision or determination . . . ."). In other words, those documents did not reflect a determination that either Bar Norfolk or the Café could operate as an "Entertainment Establishment" and provide alcoholic beverages for on-premises consumption contrary to the terms of either the 1983 or the 1997 Ordinances. Furthermore, the apparent acquiescence of the City officials in the business operations of Bar Norfolk and the Café does not satisfy the specific requirements of Code § 15.2-2311(C).

"The burden of establishing the vesting of a right to an otherwise impermissible use of property under Code § 15.2-2311(C) falls upon the property owner." Goyonaga, 275 Va. at 244, 657 S.E.2d at 160. Bar Norfolk and the Café did not satisfy that burden. Thus, the circuit court did not err in

20

determining that neither Bar Norfolk nor the Café had any vested rights under this statute.

B.   Statutory Notice and Constitutional Due Process Rights

Bar Norfolk and the Café argue that the City Council provided inadequate public notice of agenda item R-19A, to revoke the 1999 Ordinance, in violation of Code § 15.2-2204, and that its denial of their special exception applications without allowing an opportunity for adequate preparation was arbitrary, capricious, and a violation of their due process rights.[8] According to Bar Norfolk and the Café, the City Council denied them adequate notice and a reasonable opportunity to be heard. They contend that the City Council's procedures "did not comply with law, . . . due process or basic notions of fairness and reasonable conduct."

Code §§ 15.2-2204(A) and (B) contain certain advertising and written notice requirements applicable when, inter alia, a governing body intends to adopt a comprehensive plan, zoning

---

[8] Bar Norfolk and the Café also claim that the City Council's inclusion of agenda item R-19A violated Code § 2.2-3707(F).  That section requires that "[a]t least one copy of all agenda packets and, unless exempt, all materials furnished to members of a public body for a meeting shall be made available for public inspection at the same time such documents are furnished to the members of the public body."  They did not make this argument in the circuit court, and we, therefore, will not consider it on appeal.  See Rule 5:25.

21

ordinance, or amendment thereof.[9]  Code § 15.2-2204(B), however,

provides:

> A party's actual notice of, or active participation in, the proceedings for which the written notice provided by this section is required shall waive the right of that party to challenge the validity of the proceeding due to failure of the party to receive the written notice required by this section.

Bar Norfolk and the Café were notified two weeks in advance of the date of the meeting at which the City Council would consider their special exception applications.  As the circuit court found, their counsel, employees, and representatives were present at the City Council meeting, and some addressed not only the special exception applications but also the proposed ordinance to revoke the 1999 Ordinance.  Both Bar Norfolk and the Café had actual notice and actively participated in the City Council meeting, thus waiving any challenge to the notice based on the statutory provisions.  See Code § 15.2-2204(B).

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  Zinermon v. Burch, 494 U.S. 113, 125

---

[9] Contrary to Bar Norfolk's and the Café's arguments, those sections address only advertising requirements, not public notice of the items on a governing body's meeting agenda.

(1990).  In other words, "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard."  Dusenbery v. United States, 534 U.S. 161, 167 (2002) (internal quotation marks omitted).  Bar Norfolk and the Café had both.  Thus, the circuit court did not err in determining that any statutory notice to which Bar Norfolk and the Café were entitled under Code § 15.2-2204 was waived by their actual notice of and active participation in the City Council meeting, and that the City Council did not violate Bar Norfolk's and the Café's procedural due process rights.[10]

### III. CONCLUSION

In summary, Bar Norfolk and the Café did not acquire any vested rights under either Code § 15.2-2307 or Code § 15.2-2311(C).  Because they had actual notice of and actively participated in the City Council meeting, any statutory notice issues were waived and their constitutional rights were not violated.

For these reasons, we will affirm the circuit court's judgments.

Affirmed.

---

[10] The circuit court did not determine, nor do we, whether Bar Norfolk and the Café were actually entitled to written notice under Code § 15.2-2204.

23